UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ZACHARY GARCIA,

                       Plaintiff,                1:16-CV-0575
                                                 (GTS/CFH)
v.

CORR. MED. CARE, INC.,

                       Defendant.
_____

APPEARANCES:                            OF COUNSEL:

OFFICE OF DAVID H. SWYER, ESQ.          DAVID H. SWYER, ESQ.
  Counsel for Plaintiff
237 South Pearl Street
Albany, New York 12202

OFFICE OF ROBERT A. BECHER, ESQ.      ROBERT A. BECHER, ESQ.
  Co-Counsel for Plaintiff
5 Wilson Street
Albany, New York 12207

STEINBERG, SYMER & PLATT, LLP        ELLEN A. FISCHER, ESQ.
  Counsel for Defendant                JONATHAN E. SYMER, ESQ.
27 Garden Street
Poughkeepsie, New York 12601

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this prisoner civil rights action filed by Zachary Garcia

("Plaintiff") against Correctional Medical Care, Inc. ("Defendant"), pursuant to 42 U.S.C. § 1983,

is Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim upon which

relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 10.)  For the reasons set

forth below, Defendant's motion is granted.

# I.     RELEVANT BACKGROUND

## A.     Plaintiff's Complaint

Generally, in his Complaint, Plaintiff alleges as follows. (Dkt. No. 1.) "[O]n and prior to May 31, 2013," Plaintiff was confined in the Rensselaer County Jail ("Jail") in Troy, New York. (*Id.* at ¶ 8.) Plaintiff suffers from a "preexisting traumatic brain injury, a seizure disorder[,] and other neurological disorders" as the result of a motor vehicle accident. (*Id.* at ¶ 9.) In light of these conditions, Defendant–which contracted with Rensselaer County to provide health services at the Jail–should have "housed [Plaintiff] on the medical tier" so that he (1) "would not be exposed to the reasonably foreseeable hazards and perils" of being in the Jail's general population, and (2) "could receive immediate medical treatment if required[.]" (*Id.* at ¶¶ 6-7, 10.)

However, despite Plaintiff's conditions, he was housed with the Jail's general population. (*Id.* at ¶ 12.) On May 31, 2013, Plaintiff "sustained severe injuries and damages," including "loss of consciousness, tinnitus, pneumocephaly in the right frontal lobe and intracranial hemorrhage[,] necessitating surgical procedures[,] including a craniotomy." (*Id.* at ¶ 14.)

Based upon these factual allegations, Plaintiff asserts two claims: (1) a claim that, by housing him with the Jail's general population, Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the U.S. Constitution (*id.* at ¶¶ 19-25); and (2) a claim for medical malpractice under New York State law (*id.* at ¶¶ 26-29).

## B.     Parties' Briefing on Defendant's Motion to Dismiss

### 1.     Defendant's Memorandum of Law

Generally, in support of its motion to dismiss Plaintiff's Complaint, Defendant asserts four arguments: (1) Plaintiff has failed to allege facts plausibly suggesting that (a) any of

Defendant's nurses or physicians knew of, and intentionally and willfully ignored, a substantial risk of serious harm to him (given that his Complaint "fails to identify or describe any individual actor"), and (b) a causal connection between Defendant's failure to assign him to a medical tier and his injuries (given that his Complaint contains no factual allegations concerning how he was injured); (2) Plaintiff's corporate-liability claim pursuant to *Monell* (to the extent that Plaintiff may be understood to assert such a claim) must be dismissed because he has failed to allege facts plausibly suggesting the existence of a policy, custom, or practice followed by Defendant and pursuant to which he was injured; (3) the Court should decline to exercise supplemental jurisdiction over Plaintiff's medical malpractice claim; and (4) even if the Court exercises supplemental jurisdiction over Plaintiff's medical malpractice claim, the Court should dismiss that claim because he has failed to allege facts plausibly suggesting a "connection between the alleged departure from the standard of care and [P]laintiff's alleged injury[.]" (Dkt. No. 10, Attach. 2, at 2-8 [Def.'s Memo. of Law].)

## 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiff argues that Defendant's motion "should be denied in all respects" because he has alleged facts plausibly suggesting that (a) Defendant was "fully aware of his medical condition," (b) he "was exclusively confined to the medical unit at the" Jail on prior occasions due to his neurological condition, and (c) "the precise risk of severe injury that [D]efendant was aware of" occurred on May 31, 2013.[1] (Dkt. No. 13 at

---

[1] With his opposition memorandum of law, Plaintiff filed an affidavit and his attorney filed an attorney declaration. (Dkt. No. 13, Attach. 1 [Plf.'s Aff.]; Dkt. No. 13, Attach. 2 [Plf.'s Counsel's Decl.].) In his affidavit, Plaintiff asserts as follows: (1) on June 21, 2011, he was involved in a motor vehicle accident, was "severely injured," required "a full facial reconstruction," and suffered "a traumatic brain injury"; (2) "Rensselaer County Correctional Facility" was "fully cognizant" of his medical conditions requiring that he be housed on its "medical tier" during his confinement; (3) on "several occasions that [he] was confined . . . prior

5-8 [Plf.'s Opp'n Memo. of Law].)

### 3. Defendant's Reply

Generally, in its reply (which is captioned "Attorney Reply Declaration," although it contains no numbered paragraphs), Defendant argues as follows: (1) even if considered, Plaintiff's affidavit and Complaint) do not allege facts plausibly suggesting (a) what happened on May 31, 2013, that caused his "severe injuries and damages," (b) how his preexisting medical conditions were relevant to the injuries he sustained on that date, and/or (c) how his location in the Jail was "causally related to the injury[-]producing occurrence"; (2) Plaintiff's counsel's assertion that Plaintiff was "assaulted and beaten by one or more inmates" is without evidentiary value because "there is no basis stated for [counsel's] knowledge other than 'upon information and belief'"; (3) Plaintiff's counsel's declaration does not plausibly suggest any basis for his assertion that the alleged assault would have been prevented if Plaintiff had been housed in the "medical unit"; and (4) Plaintiff has failed to allege facts plausibly suggesting that (a) his medical conditions were willfully or wantonly ignored or (b) any unidentified employee of Defendant

---

to [his] incarceration in March of 2013," he was "always housed on the medical unit" and "never released to the general population" due to his "neurological condition"; (4) on May 31, 2013, while housed with the "general inmate population," he "sustained severe injuries and damages including but not [*sic*] loss of consciousness, tinnitus, pneumocephaly in the right frontal lobe and intracranial hemorrhage necessitating surgical procedures including a craniotomy"; and (5) had he been housed on the medical tier, "the aforesaid injuries . . . would not have occurred." (Dkt. No. 13, Attach. 1, at ¶¶ 2-7). In his attorney declaration, Plaintiff's counsel asserts, among other things, that (1) it "was impossible to determine the identity of the . . . individuals . . . who made the decision not to confine [P]laintiff to the medical tier at the" Jail because he "was retained shortly prior to the expiration of the statute of limitations," and, (2) "upon information and belief, [P]laintiff was severely injured on May 31, 2013[,] when he was assaulted and beaten by one or more inmates" while in the "general population tier." (Dkt. No. 13, Attach. 2, at ¶¶ 5-6.) Plaintiff recites these assertions set forth in his affidavit, as well as those in his attorney's declaration, in the "PLAINTIFF'S COMPLAINT" section of his opposition memorandum of law. (Dkt. No. 13 at 3-4 [Plf.'s Opp'n Memo. of Law].)

"knew of a substantial or excessive risk that [P]laintiff would be assaulted by" other individuals confined at the Jail.[2] (Dkt. No. 14 at 1-4 [Def.'s Reply Atty. Decl.].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by

---

[2]    Defendant is respectfully reminded that, pursuant to the Court's Local Rules of Practice, affidavits must not contain legal arguments. N.D.N.Y. L.R. 7.1(a)(2). Legal arguments must be set forth in a memorandum of law. N.D.N.Y. L.R. 7.1(a)(1).

requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in

6

detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Id.* at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[3] However, no other materials may be considered where, as here, the plaintiff was represented by counsel.

---

[3]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") (internal quotation marks and citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

## B. Legal Standards Governing Claim of Deliberate Indifference to Serious Medical Needs

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 25 [1993]).[4] Within that framework, "[t]he Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006); *accord, Estelle v. Gamble*, 429 U.S. 97, 103 (1976). However, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-04). In this context, a prison official violates the Eighth Amendment only when two requirements are satisfied. *Farmer*, 511 U.S. at 834.

### 1. Objective Requirement–Serious Medical Needs

"The first requirement is objective: the alleged deprivation of adequate medical care must be 'sufficiently serious.'" *Salahuddin*, 467 F.3d at 279 (citation and internal quotation marks omitted); *accord*, *Farmer*, 511 U.S. at 834. Evaluation of the objective prong involves two inquiries: (1) "whether the prisoner was actually deprived of adequate medical care," and (2) "whether the inadequacy in medical care is sufficiently serious." *Salahuddin*, 467 F.3d at 279-80.

---

[4]     *See also Iacovangelo v. Corr. Med. Care, Inc.,* 624 F. App'x 10, 12 (2d Cir. 2015) ("A claim for indifference to the medical needs of a pre-trial detainee in state custody is properly analyzed under the Due Process Clause of the Fourteenth Amendment, though such claims 'should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.'") (quoting *Caiozzo v. Koreman*, 581 F.3d 63, 72 [2d Cir. 2009]).

With regard to the first inquiry, because a prison official need provide only "reasonable care," one who acts reasonably in response to an inmate's health risk "cannot be found liable under the Cruel and Unusual Punishments clause." *Id.* at 279-80 (quoting *Farmer*, 511 U.S. at 845). "The word 'adequate' reflects the reality that '[p]rison officials are not obligated to provide inmates with whatever care the inmates desire.'" *Banks v. Annucci*, 48 F. Supp. 3d 394, 408-09 (N.D.N.Y. 2014) (Hurd, J.) (quoting *Jones v. Westchester Cty. Dep't of Corrs. Med. Dep't*, 557 F. Supp. 2d 408, 413 [S.D.N.Y. 2008]).

With regard to the second inquiry, determining whether the alleged inadequacy was "sufficiently serious" involves an examination of "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280 (citation omitted). If the unreasonable medical care alleged was a "failure to provide any treatment" for the inmate's medical condition, courts examine whether the condition itself is sufficiently serious. *Id.*; *see also Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003) ("There is no need to distinguish between a prisoner's underlying 'serious medical condition' and the circumstances of his 'serious medical need' when the prisoner alleges that prison officials have failed to provide general treatment for his medical condition.") (footnote omitted). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin*, 467 F.3d at 280 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 [2d Cir. 1998]); *accord, Rodriguez v. Manenti*, 606 F. App'x 25, 26 (2d Cir. 2015) (summary order); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("Objectively, the alleged deprivation must be

'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists.") (citation omitted). "A finding of a serious medical need 'is necessarily contextual and fact-specific,' and thus 'must be tailored to the specific circumstances of each case.'" *Shenk v. Cattaraugus Cty.*, 305 F. App'x 751, 753 (2d Cir. 2009) (summary order) (quoting *Smith*, 316 F.3d at 185).

However, "[i]n cases where the inadequacy is in the medical treatment given," as opposed to a complete absence of treatment, "the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith*, 316 F.3d at 185). "In other words, the Court asks 'whether, from an objective standpoint, the temporary deprivation was sufficiently harmful to establish a constitutional violation.'" *Kidkarndee v. Koenigsmann*, 12-CV-0502, 2014 WL 1239319, at *14 (N.D.N.Y. Mar. 25, 2014) (Suddaby, J., adopting Report-Recommendation of Hummel, M.J.) (quoting *Frank v. Cty. of Ontario*, 884 F. Supp. 2d 11, 19 [W.D.N.Y. 2012]). In short, although courts "sometimes speak of a 'serious medical condition' as the basis for an Eighth Amendment Claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability." *Salahuddin*, 467 F.3d at 280.

## 2. Subjective Requirement–Deliberate Indifference

"The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. "[A]

complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *accord, Daniels v. Williams*, 474 U.S. 327, 331-33 (1986) (explaining that "injuries inflicted by governmental negligence are not addressed by the United States Constitution"). "[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence," *Farmer*, 511 U.S. at 835, equivalent to "subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280; *accord, Smith*, 316 F.3d at 184. "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280; *accord, Farmer*, 511 U.S. at 837-38 ("An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis."). Because this inquiry is subjective, "[p]rison officials may . . . introduce proof that they were not so aware, such as testimony that 'they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.'" *Salahuddin*, 467 F.3d at 280 (quoting *Farmer*, 511 U.S. at 844). However, "evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003). "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Chance*, 143 F.3d at 703.

## III.    ANALYSIS

After carefully considering the matter, the Court finds that Plaintiff's Complaint must be dismissed for the reasons set forth in Defendant's memorandum of law and reply attorney declaration.  (Dkt. No. 10, Attach. 2, at 2-8 [Def.'s Memo. of Law]; Dkt. No. 14 at 2-4 [Def.'s Reply Atty. Decl.].)  To those reasons, the Court adds two points.

First, Plaintiff's Complaint is devoid of factual allegations plausibly suggesting either an Eighth Amendment claim or a medical malpractice claim.[5]

Second, the Court accepts Defendant's argument in its reply that, even if Plaintiff's submissions in opposition to its motion to dismiss are considered (despite the fact that those submissions are outside the four corners of the Complaint), he has failed to allege facts plausibly suggesting either an Eighth Amendment claim or a medical malpractice claim.  (Dkt. No. 14 at 2-4 [Def.'s Reply Atty. Decl.].)

---

[5]    Moreover, "[c]orporate entities . . . are treated the same as a municipality when performing the public function of running a jail."  *Mercado v. City of New York*, 08-CV-2855, 2011 WL 6057839, at *7 n.10 (S.D.N.Y. Dec. 5, 2011) (citations omitted).  Thus, Defendant "enjoys the benefits of the *Monell* requirements for the same reason it may be named as a defendant in a § 1983 suit."  *Cruz v. Corizon Health Inc.*, 13-CV-2563, 2016 WL 4535040, at *8 n.11 (S.D.N.Y. Aug. 29, 2016) (quoting *Bess v. City of New York*, 11-CV-7604, 2013 WL 1164919, at *2 [S.D.N.Y. Mar. 19, 2013]) (concluding that "[t]he analysis under *Monell* . . . applies equally to Corizon," a private entity that "provides medical care in prisons and thus 'performs a role traditionally within the exclusive prerogative of the state'"); *see generally Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses.").  The Court accepts Defendant's argument that Plaintiff  has failed to allege facts plausibly suggesting the existence of a policy, custom, or practice followed by Defendant and pursuant to which he was injured, as required by *Monell*.  (Dkt. No. 10, Attach. 2, at 6-8 [Def.'s Memo. of Law].)

13

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to dismiss Plaintiff's Complaint (Dkt. No. 10) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** with prejudice; and it

is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant and

close this case.

Dated: March 7, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge